# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **A.D., L.D., and C.D.**

**No. 21-0706** (Kanawha County 20-JA-251, 20-JA-252, and 20-JA-253)

## MEMORANDUM DECISION

Petitioner Mother M.D., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's August 5, 2021, order terminating her parental rights to A.D., L.D., and C.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Bryan B. Escue, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2020, the DHHR filed a child abuse and neglect petition against petitioner and the father based upon allegations of drug abuse. Specifically, the DHHR alleged that then nine-year-old C.D. reported that the parents abused drugs. C.D. stated that she missed a lot of school because her parents would not wake in the morning and that they would stay awake for days at a time and then sleep for long periods of time. The child further disclosed that she had to change A.D.'s diapers and feed then-one-year-old A.D. because the parents would not wake to do it, and that she and L.D., then ages nine and seven, had to make food for themselves. C.D. reported that strangers frequently came to the home to smoke things out of pipes. Other family members also reported that the parents abused drugs. The DHHR alleged that petitioner's sister claimed that petitioner had been abusing methamphetamine for eight or night years and that it was "worse than

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

it has ever been." Further, a friend reported to the DHHR that petitioner took the child A.D. to a known drug house. As such, the DHHR concluded that the parents failed to provide the children with necessary food, clothing, supervision, and housing, and that the parents were not sufficiently motivated to provide for the needs of the children on an ongoing basis.

The circuit court held an adjudicatory hearing in July of 2020 and, after hearing testimony, adjudicated petitioner as an abusing parent, specifically relying on C.D.'s disclosures. Petitioner requested a post-adjudicatory improvement period, and the circuit court granted her the same. As part of the terms and conditions, the circuit court ordered petitioner to participate in parenting and adult life skills classes, submit to random drug screens, obtain and maintain suitable housing, and participate in supervised visits with the children contingent upon negative drug screens.

Petitioner initially participated in services and tested negative during drug screens such that she was granted unsupervised visitation with the children. However, around February or March of 2021, petitioner ceased submitting to drug screens. In a DHHR report, the Child Protective Services ("CPS") worker noted that petitioner and the father failed to appear for a screen, and visits with the children were suspended at that time. Further, in May of 2021, petitioner physically assaulted her friend, who had placement of two of the children.[2] Petitioner was arrested and charged with domestic battery.

In July of 2021, the circuit court held a dispositional hearing. The ongoing CPS worker testified that the DHHR recommended that petitioner's parental rights be terminated. The worker testified that the petition was filed based upon allegations of drug abuse and that after the father failed a drug screen in May of 2021, he and petitioner thereafter ceased submitting to drug screens. According to the worker, petitioner never completed any drug treatment and failed to obtain suitable housing. The worker also confirmed that petitioner physically fought with the two children's former foster mother, a family friend, in front of the child C.D. in May of 2021.

Petitioner testified that she recently ceased submitting to drug screens because the swabs were causing her mouth to blister. Petitioner claimed that she requested to be drug tested another way but that no accommodations were made. According to petitioner, she resumed submitting to drug screens shortly before the dispositional hearing. Petitioner testified that she had not tested positive for any drugs throughout the pendency of the matter and that she obtained employment. Petitioner acknowledged that she was living in a two-bedroom home with her aunt but claimed that she had been approved for housing assistance with Housing and Urban Development ("HUD") and would have appropriate housing for the children soon. Petitioner requested additional time to comply with services.

After hearing testimony, the circuit court found that petitioner left a drug rehabilitation program without completing it and missed several drug screens throughout the proceedings. The circuit court found that the excuses given for the missed screens were not valid and further found that it "d[id not] believe some of the answers to the questions that have been posed here today relative to illegal drug use." According to the circuit court, petitioner participated in some services

---

[2]Following this altercation, the children were removed from the foster mother's home, and all three children were placed together in a different foster home.

but failed to make any improvement in her behavior. Further, petitioner had no housing and had been employed for only one week. Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the circuit court's August 5, 2021, dispositional order terminating her parental rights.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she had substantially complied with the terms and conditions of her improvement period. According to petitioner, she submitted to drug screens until she began having an allergic reaction to the oral swabs used. While she ceased submitting to screens for a brief period of time, she resumed screening despite continued allergic reactions and never tested positive for drugs during the proceedings. Petitioner also contends that she obtained employment and had been approved for housing assistance with HUD. Petitioner claims that she "was ready to regain physical custody of her children within days of the dispositional hearing" and had substantially corrected the problems which led to the petition's filing. Petitioner acknowledges her mistake of getting into an altercation in front of one of the children but argues that "[a] mother's parental rights should not be terminated over one family feud."[4]

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is

---

[3]The father's parental rights to the children were also terminated below. The permanency plan for the children is adoption by their foster family.

[4]Petitioner's counsel references the person with whom the children were placed as petitioner's sister. However, such a familial relationship is not apparent from the record.

3

no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record establishes that petitioner failed to follow through with services designed to reduce or prevent the abuse or neglect of the children. While petitioner participated in her improvement period for a portion of the proceedings below, she eventually ceased submitting to drug screens. Notably, petitioner ceased submitting to screens at the same time the father relapsed on methamphetamine and also ceased submitting to drug screens. Petitioner denied abusing drugs and claimed that she ceased submitting to screens because of an allergic reaction caused by the oral swabs used. The circuit court found that petitioner's excuses for not submitting to screens were invalid, and it further found that the testimony denying drug use was not credible. Further, petitioner did not complete parenting or adult life skills classes and did not attain appropriate housing for the children. Petitioner also engaged in a physical altercation with her friend, with whom two of the children were residing at that time, in front of the child C.D. Accordingly, the circuit court found that petitioner failed to make any improvement in her behavior, missed several drug screens, and failed to obtain housing or employment. Under these circumstances, petitioner's failure to successfully complete her improvement period was sufficient to support the circuit court's determination that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future.

To the extent petitioner argues that she should have been given more time to comply with services, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child[ren] will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, it is clear that petitioner failed to remedy the conditions of abuse and neglect and, thus, termination of her parental rights was not error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 5, 2021, order is hereby affirmed.

4

Affirmed.

**ISSUED**: March 9, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment